**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

ALESIA FLAMENT,                             )
                                            )
            Plaintiff,               )
                                            )        2:24-cv-00977
v.                                          )
                                            )
ALLEGHENY HEALTH NETWORK, et al.,           )
                                            )
            Defendants.              )

**MEMORANDUM ORDER RESOLVING PENDING MOTIONS TO DISMISS AND THE
IMPOSITION OF SANCTIONS, HOLDING DISCOVERY IN ABEYANCE, AND
ADDRESSING CERTAIN OTHER MATTERS**

On March 24, 2026, the Court issued an Order staying this Civil Action. (ECF No. 147). In that Order, the Court held all proceedings and deadlines in this Action in abeyance and required Plaintiff's counsel to show cause why he should not be subject to sanctions and why the First Amended Complaint ("FAC"), (ECF No. 74), should not be stricken. The Court then scheduled and held an Oral Argument and Show Cause Hearing on all then-pending Motions and the sanctions matter. Based on the consideration of the record, the Court comes to the following conclusions on all pending matters:

I. **Motions to Dismiss:** The Court grants the Motions to Dismiss ("MTDs") as to Defendants Rachel Jones and Kathy Sikora, and also as to General Healthcare Resources, LLC ("GHR"). (ECF Nos. 122, 125, 127). The dismissal as to Jones is without prejudice to the Plaintiff filing a Second Amended Complaint ("SAC") that states a viable claim and is in accordance with the Federal Rules. The dismissals as to Sikora and GHR are with prejudice and with no leave to amend. The Court denies the MTD as to Defendant Tarah Day. (ECF No. 125).

II. **First Amended Complaint:** The Court strikes the FAC without prejudice to the Plaintiff refiling a SAC that is compliant with the Court's Orders and the Federal Rules of Civil Procedure.

III. **Sanctions:** The Court concludes that Plaintiff's counsel knowingly violated the Court's Protective Order, (ECF No. 51), and finds his explanations and justifications for doing so unavailing. The Court concludes that it will impose sanctions on Plaintiff's counsel

1

pursuant to Rule 37 of the Federal Rules of Civil Procedure and the Court's inherent authority.

The Court notes that all discovery shall remain stayed pending further Order of the Court. After Plaintiff files her SAC, as authorized by this Memorandum Order, the Court will enter such Orders as are appropriate. The remainder of this Memorandum Order will address each of the issues numerated above.

## I.   Motions to Dismiss

There are three pending MTDs in this case. The first was filed by Rachel Jones (ECF No. 122); the second jointly by Kathy Sikora and Tarah Day,[1] (ECF No. 125); and the third by GHR, (ECF No. 127). The Court grants the MTDs as to Defendants Rachel Jones, Kathy Sikora, and GHR. It denies the MTD as to Defendant Tarah Day.

### A.  Background

The Court assumes the reader's general familiarity with this civil action. At base, this is an employment discrimination action brought by Ms. Alesia Flament, a Black woman who formerly worked as a travel nurse employed by GHR. Flament was placed by GHR at Allegheny General Hospital, which is part of Allegheny Health Network ("AHN"). AHN, through employees at Allegheny General Hospital, thus controlled her day-to-day working conditions. Many of the facts

---

[1] The Motion to Dismiss filed by Tarah Day and Kathy Sikora was also filed by Allegheny Health Network ("AHN"). In addition to requesting the wholesale dismissal of Tarah Day and Kathy Sikora from the civil action, the Motion also requests that the Court dismiss Count I as to AHN and strike certain portions of the FAC. (ECF Nos. 125, 126). In Part I of the Court's Memorandum Opinion, the Court only contends with the part of the Motion that requests the dismissals of named Defendants Tarah Day and Kathy Sikora. As the Court previewed above and expands upon in Part II of this Memorandum Opinion, the Court will strike all of the FAC for violating the Court's Protective Order and the Federal Rules of Civil Procedure. The Court rejects AHN's argument that Count I (Plaintiff's race discrimination claim) should be dismissed for the independent reason that it is an improper pattern-or-practice discrimination claim. The Court does not read Count I as being *solely* premised on pattern-or-practice allegations, although the breadth of such allegations against AHN strikes the Court as akin to how such assertions would ordinarily be pled in such a case. It also appears to the Court, based on the matters raised at Oral Argument, that Plaintiff's broad allegations about a supposed overarching environment of racial animus at AHN beyond the conduct alleged as to the Plaintiff are speculative suppositions by Plaintiff's counsel without a basis in revealed facts. So, as the Court cautions below, the Plaintiff is reminded to include only relevant, procedurally and substantively proper claims and statements of fact in any SAC.

of the case involve the actions and conduct of one particular former employee of AHN — Kelly Goedeker — who allegedly made many racially hostile comments in the workplace, both about the Plaintiff and about Black people in general. The case, at its core, is about what the Defendants did and did not do in response to Goedeker's offensive and unwelcome behavior.

When this civil action was initially filed on July 5, 2024, more than two years ago, the only named Defendants were AHN and GHR. (ECF No. 1). AHN moved to dismiss for failure to state a claim on September 4, 2024. (ECF Nos. 13, 14). In what this Court described in its Opinion of November 25, 2024, as "a close call" due to the Complaint "toe[ing] the line of legal insufficiency," the Court denied AHN's Motion to Dismiss. (ECF No. 23, at 15).

The parties filed a request for the entry of a Stipulated Protective Order concerning various protections for the discovery and production of designated confidential material on May 1, 2025. (ECF No. 50). The Court entered the Stipulated Protective Order that same day. (ECF No. 51). Fact discovery was set to close on November 24, 2025, (ECF No. 55), but on August 11, 2025, the Plaintiff filed a Motion for Leave to File an Amended Complaint and a Motion for Joinder. (ECF Nos. 59, 60). The Court held Oral Argument on the Motions on September 8, 2025, (ECF No. 72), and then granted the Motions in part, (ECF No. 73). The Plaintiff filed her First Amended Complaint ("FAC") on September 30, 2025, which is the operative complaint in this action at present. (ECF No. 74). In addition to naming AHN and GHR as Defendants, the FAC named as Defendants for the first time Sunburst Workforce Advisors, LLC; AMN Healthcare Services; Kathy Sikora; Tarah Day; and Rachel Jones. (*Id.*).

The Motions to Dismiss from Rachel Jones, Tarah Day, Kathy Sikora, and GHR were filed on January 9, 2026. (ECF Nos. 122–28). The resolution of the Motions was delayed, however, because on March 24, 2026, the Court stayed and held all further proceedings in this action in

3

abeyance due to the Plaintiff appearing to have violated the Court's Protective Order. (ECF No. 147). The Court issued a Show Cause Order to Plaintiff's Counsel as to such and allowed Defendants to file responsive briefing and Plaintiff to reply. Oral Argument and a Hearing on all pending matters was held on June 30, 2026. (ECF No. 163).

### B. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed if it fails to state a claim upon which relief can be granted. The allegations included in a complaint must be enough to raise a right to relief above the speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must dismiss a claim if it does not contain "enough facts to state a claim to relief that is plausible on its face." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008).

### C. Discussion

In the subsections below, the Court first addresses why the FAC does or does not fall short of stating a plausible claim upon which relief can be granted as to each of the individually named Defendants (Rachel Jones, Tarah Day, and Kathy Sikora), and then it discusses why the FAC falls short of stating a plausible claim upon which relief can be granted as to GHR.

#### 1. Individual Defendants

The Plaintiff asserts that Rachel Jones, Tarah Day, and Kathy Sikora should each be held individually liable — jointly and severally — for race discrimination, a hostile work environment, and retaliation, all in violation of Section 1981 of the Civil Rights Act of 1866. For an individual to be liable under Section 1981, they must be "involved personally in acts of discrimination." *Clinkscales v. Children's Hosp. of Philadelphia*, 2009 WL 1259104, at *5 (E.D. Pa. May 7, 2009).

4

To illustrate that an individual defendant was personally involved in the act of discrimination, the plaintiff must demonstrate that that individual either "intentionally caused" the infringement of the plaintiff's rights or "authorized, directed, or participated in the alleged discriminatory conduct." *Al-Khazraji v. Saint Francis Coll.*, 784 F.2d 505, 518 (3d Cir. 1986).

### i.    Rachel Jones

Rachel Jones was an Employee Relations Lead at AHN at relevant times to this litigation. The sum total of the Plaintiff's allegations concerning Jones's involvement in relevant matters includes the following.

(1) Jones "falsely" asserted, at some point and in some capacity, that Plaintiff's allegations of racial harassment had been fully investigated by AHN and were found to be "unsubstantiated." (ECF No. 74, ¶ 128).

(2) Jones received an email from Tarah Day stating that the Plaintiff's conduct was "aggressive" and "unprofessional." (ECF No. 74, ¶ 129).

(3) Jones emailed DEI leaders at AHN stating that a "full and thorough investigation was launched by the Employee Relations team and it was found that Alesia's claims were unsubstantiated." (ECF No. 74, ¶ 130).

The Plaintiff thus asserts that Jones "effectively prevented DEI leadership from intervening or correcting the record and directly contributed to Plaintiff's retaliatory termination." (ECF No. 74, ¶ 133).

Nowhere does the Plaintiff assert that Jones knew that the Plaintiff's allegations of racial misconduct were not, in fact, unsubstantiated. Based on the FAC, Jones appears to be the intermediary between two different groups of people at AHN. She passed along information about the result of the investigation into the Plaintiff's complaints, and no basis is advanced that she

either had an obligation under prevailing law to corroborate the findings of that investigation or actually corroborated the findings of that investigation and then misstated them. The Plaintiff claims that Jones "falsely claimed that Plaintiff's allegations had been fully investigated and were 'unsubstantiated,'" but it is purely speculative that Jones *knew* that the investigation contained essential omissions and that such communications by Jones in any way changed the conditions of Plaintiff's employment. There are not sufficient allegations in the FAC that Jones either "intentionally caused" the infringement of the plaintiff's rights or "authorized, directed, or participated in the alleged discriminatory conduct." *Al-Khazraji*, 784 F.2d at 518.

But because, at least in theory, any claims against Jones could be susceptible to advancement via amendment, the Court will grant the Motion to Dismiss as to her but without prejudice and with leave to amend. That being said, the Court cautions the Plaintiff that the sweeping speculation that Plaintiff's counsel asserted during Oral Argument about what Jones might have or should have known simply will not cut it in terms of any amendment, and any amendatory effort must be considered in that vein. At Oral Argument, Plaintiff's counsel repeatedly appeared to rely on a principle that anyone "involved" in the process who also had any HR leadership role at AHN was automatically in the zone of liability by virtue of those two things alone. Not so under the law. Plaintiff is specifically warned in that light to proceed with caution before continuing to assert a claim against Jones.

### ii.    Kathy Sikora

The allegations in the FAC against Kathy Sikora as an individually named Defendant also do not pass muster. The sum total of the Plaintiff's allegations against Kathy Sikora are as follows.

(1) Sikora was present at an AHN investigatory meeting on January 23, 2023, about Plaintiff's allegations that Goedeker made racist comments. (ECF No. 74, ¶ 46).

6

(2) Notes from HR Representative Marsha Campbell from the meeting on January 23, 2023, reflect that Sikora advocated for counseling for Goedeker. Those notes also reflect that Sikora made comments about Goedeker's behavior, including that Goedeker was "antagonizing," and that Goedeker says things she thinks are funny "but it's not." (ECF No. 74, ¶¶ 48, 50).

(3) Sikora "[o]versaw" a "[s]elective and [m]isleading [i]nvestigation" of Plaintiff's complaints, which culminated in Goedeker being issued a "First Written Warning" and referred to diversity training in January 2023. (ECF No. 74, ¶¶ 86, 95, 101).

(4) Sikora said "[i]n a communication" (unspecified when) that Goedeker lied during the AHN investigation because Goedeker admitted to making racially antagonistic remarks to her union representative, John Testa, but denied making them in the investigation. Testa apparently informed Sikora of this. (ECF No. 74, ¶¶ 49, 100).

(5) Sikora wrote an email on January 26, 2023, that said that she had become "aware of [the Plaintiff's complaints of Goedeker's racial hostility] on 1/17." She said that the investigation was "gather[ing] statements and working closely with Employee Relations." She noted that "[s]ome of the incidents referred to go back to September, but we are reviewing all, once again with Employee Relations." (ECF No. 74, ¶ 96).

The Plaintiff alleges that these essentially benign factual allegations lead to the conclusion that Sikora was "shield[ing] Ms. Goedeker." (ECF No. 74, ¶ 103).

These allegations do not rise to the level of plausibly showing that Sikora either "intentionally caused" the infringement of the plaintiff's rights or "authorized, directed, or participated in the alleged discriminatory conduct." *Al-Khazraji*, 784 F.2d at 518. Boiled down, the crux of the Plaintiff's allegations as to Sikora is that she did not recommend that AHN take a

7

tougher or more vigorous approach to Goedeker's conduct. But it has long been settled that the federal courts do not sit as some sort of "super-personnel department." *Klimek v. United Steel Workers Loc. 397*, 618 F. App'x 77, 80 (3d Cir. 2015). The allegations show, at most, the following: Sikora participated with others in discussions concerning the matters advanced internally by Plaintiff, which is not unlawful. In those discussions, she recapped events involved in AHN's processes, and appeared to be critical of Goedeker — just not as critical as Plaintiff would have preferred.

The allegation that Sikora "oversaw" the investigation is purely conclusory. The allegations that go to that conclusion are only that Sikora was present at the meeting on January 23, 2023, and that she transmitted an email saying that she had become aware of the Plaintiff's complaints in mid-January and that an investigation was ongoing. The Plaintiff includes no allegations as to the AHN employment structure or investigatory apparatus that would lead the Court — or plausibly lead a fact finder — to conclude that Sikora was "shielding" Goedeker during the investigation into her conduct or that Sikora was overseeing any investigation. The Plaintiff does not allege that Sikora had any supervisory authority over the Plaintiff, nor that Sikora took any disciplinary actions against the Plaintiff. (ECF No. 126, at 6). Based on the factual allegations in the FAC, it appears that Marsha Campbell was the individual who "closed the investigation" on January 26, 2023, at 9:00 AM, and did not reopen it when, later that same day, Campbell received a written email from Gabrielle Diamond (a Black RN at AHN) about an incident in which Goedeker said that she "hate[d] black people" and would make the Plaintiff her "slave." (ECF No. 74, ¶ 91). The Court finds that a fact finder could not plausibly conclude that Sikora intentionally discriminated against the Plaintiff or had any authority to direct others to do so, or that these

8

assertions constitute a plausible "showing" of liability. And at Oral Argument, Plaintiff's counsel advanced nothing to take the allegations of the FAC beyond rhetorical hyperbole as to Sikora.

Having had years to generate a plausible basis for the assertion of a valid claim against Sikora and having heard from Plaintiff's counsel at Oral Argument, the Court concludes that any further amendment would be futile, given that what has been or could be asserted as to Sikora falls so far short of the mark. The Motion to Dismiss as to Sikora is granted with prejudice, and Plaintiff is not granted leave to amend as to her.

### iii.    Tarah Day

The Court will not dismiss individually named Defendant Tarah Day from this action at this time. Day was a Nurse Manager at Allegheny General Hospital, where the Plaintiff worked at all relevant times to this litigation. (ECF No. 74, ¶ 8). Here's what the FAC says as to her.

The Plaintiff alleges that Day "initiated and coordinated Plaintiff's termination, suppressed reports of race-based misconduct, and misrepresented the outcome of an internal investigation." (*Id.*). Day was aware of the Plaintiff's complaints about Goedeker's racially hostile remarks, as she asked the Plaintiff to come to her office to discuss the allegations on January 17, 2023, after the Plaintiff reported Goedeker's comments to a GHR Client Manager. (ECF No. 74, ¶¶ 37, 38). Day was also purportedly present at the investigatory meeting about Plaintiff's complaints that occurred on January 23, 2023. (ECF No. 74, ¶ 81). The next day, Day allegedly called the Plaintiff and "offered her the option to cancel her assignment at AHN 'without consequences.'" (ECF No. 74, ¶ 80). Day allegedly discouraged one of the Black employees in the unit — CNA Shondell Brown — from providing a statement in the investigation into Goedeker's conduct, though no facts are provided that actually support that allegation. (ECF No. 74, ¶¶ 62–64, 82).

In "early Spring 2023," Day informed Plaintiff that the Plaintiff "would no longer be permitted to pick up overtime shifts, stating that the restriction came 'per the higher ups.'" (ECF No. 74, ¶ 104). When the Plaintiff continued to ask about picking up overtime — as she purportedly always had — Day wrote, "I don't know if anyone else has noticed this, but Lee is being very aggressive with her overtime… she even messages me on Epic chat after I've talked to her about it. It's getting pretty exhausting." (ECF No. 74, ¶ 107).

Then, on May 4, 2023, Day allegedly initiated an internal investigation about the Plaintiff being "aggressive." (ECF No. 74, ¶ 15). This came after an incident in which the Plaintiff disagreed with another employee over the treatment protocol regarding a Black patient's pain management. Day informed the Plaintiff that the other employee — Physician's Assistant Brea Interval — had complained that the Plaintiff was "aggressive." (ECF No. 74, 121). After that meeting, Plaintiff texted Ms. Day: "I am very upset. I know I am not aggressive and I truly don't appreciate being called aggressive." (ECF No. 74, ¶ 124). The Plaintiff went to the DEI team with her concerns over being called "aggressive." On May 5, 2023, Day forwarded an email to Rachel Jones that "fram[ed] Plaintiff's conduct as 'aggressive' and 'unprofessional.'" (ECF No. 74, ¶ 129). It is unclear who initially wrote that email, as Day is alleged to have forwarded it.

On May 5, 2023, Day wrote a memo recommending AHN terminate the Plaintiff's employment. Day wrote that she was "uncomfortable in conversations with [the Plaintiff] for fear of being labeled as a racist," and that "[e]ach time [the Plaintiff] comes back reporting that the involved team member has a racial issue. I feel at this time [the Plaintiff] is doing more harm to our unit than good." (ECF No. 74, ¶ 73). Day also asserted in that memo that the Plaintiff's statements about "times she felt racism was a factor in patient treatment or interactions she had with staff" were "unfounded and no disciplines issued." (ECF No. 74, ¶ 136). In that same memo,

10

Day writes: "Staff have come to me multiple times stating [the Plaintiff] is aggressive and abrasive. Nurses have also reported she is condescending in her interactions. Initially I felt this was because she is from NJ and the atmosphere is much more mid-west than the abrasive culture in NJ, NY, and eastern PA. However, the more we interact the more I strongly feel she violates our core behaviors, specifically trust working together." (ECF No. 74, ¶ 138).

AHN informed GHR that the Plaintiff was being terminated from service at AHN on May 8, 2023. Day's memo was attached as documentation, which included allegedly false statements including those above and the statement that the Plaintiff "had multiple coaching and counseling situations that were unsuccessful." (ECF No. 74, ¶ 156).

The above facts are sufficient for the Court to conclude that the Plaintiff has articulated a basis for a fact finder to conclude that it is plausible that Day either intentionally discriminated against the Plaintiff or directed or actively participated in others doing so. For that reason, the Motion to Dismiss individually named Defendant Tarah Day is denied.

### 2. General Healthcare Resources, LLC

GHR is a healthcare staffing agency. The Plaintiff received paychecks through GHR but, at all times material to this litigation, actually worked at an AHN hospital. Read charitably, the FAC appears to assert that GHR provided nursing staff, including the Plaintiff, to AHN and that AHN handled essentially all workplace matters as to the Plaintiff. The employees who allegedly engaged in racially hostile conduct toward the Plaintiff were employees of AHN, not GHR. Unsurprisingly, the Plaintiff directed most of her complaints concerning racial mistreatment to HR and staff members at AHN, not GHR. The exception was that on January 16, 2023, the Plaintiff reported Goedeker's comments to a GHR Client Manager, who documented the complaint and

said she would follow up with AHN management. (ECF No. 74, ¶ 37). The FAC makes no further mention of GHR's action or inaction regarding this initial complaint in mid-January.

As the events of 2023 progressed, the FAC does not assert that GHR was involved in any of the other issues or complaints that arose involving the Plaintiff, or was even notified of them, until AHN told GHR that it was terminating the Plaintiff. Although the Plaintiff asserts that "[n]o Defendant, including AHN, GHR, Sunburst, or AMN investigated Plaintiff's complaints regarding retaliatory scheduling or the unequal denial of overtime," the Plaintiff does not assert anywhere that GHR was ever made aware of those scheduling concerns. (ECF No. 74, ¶ 109). Then, according to the FAC, on May 8, 2023, GHR was told by AHN that the Plaintiff was being terminated from service at AHN's facilities and provided the memo generated by Day as to why. (ECF No. 74, ¶¶ 153, 164). That memo included statements, some of which are stated above, that the Plaintiff's complaints concerning racial animosity in the workplace were unfounded.

The Plaintiff claims discrimination, a hostile work environment, and retaliation against GHR under Section 1981. The Court will address each in turn. At base, the Plaintiff does not assert sufficient factual involvement or indicia of intent in the FAC as to GHR to sustain any of those claims against it. To establish a discrimination claim under Section 1981, the plaintiff must show "an intent to discriminate on the basis of race by the defendant" and "discrimination concerning one or more of the activities enumerated in § 1981." *Castleberry v. STI Group*, 863 F.3d 259, 263 (3d Cir. 2017). Those activities enumerated in Section 1981 include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981.

The Plaintiff here does not plausibly allege that GHR had *intent* to discriminate. It is not pleaded that GHR terminated the Plaintiff's employment at AHN or anywhere else, or took her off

of its list of eligible travel nurses for placement at workplaces other than AHN. Counsel for Plaintiff does not cite any cases that suggest that a staffing agency has an independent investigatory duty when a contractual partner terminates the service of an employee from that specific workplace to investigate or intervene to reinstate that employee at that particular workplace, nor does Plaintiff's counsel cite any cases that suggest that such a staffing agency has the power to compel AHN to retain the services of the Plaintiff or anyone else. And at Oral Argument, Plaintiff's counsel could not point to any applicable law (or plausible facts) that GHN had the power to reverse or control AHN's decision relative to Plaintiff's service at AHN.

The FAC asserts that AHN provided allegedly inaccurate reasoning (as written by Tarah Day and attached to the communication between AHN and GHR) to GHR for the termination of the Plaintiff's services at AHN. It alleges nothing more about GHR's conduct. The allegation in the FAC that GHR was potentially misled does not make it plausibly liable for discrimination against the Plaintiff via Section 1981. In short, there is nothing plausibly alleged in the FAC that GHR had anything to do with AHN's decision to no longer use Plaintiff's services, or that GHR had the duty or even the capability to do anything other than reassign the Plaintiff elsewhere — which it asserted at Oral Argument, without contradiction by Plaintiff, that it was prepared to do.

The Plaintiff similarly cannot establish a plausible prima facie case for GHR being liable under Section 1981 for a hostile work environment as to the Plaintiff while she performed services at AHN. The elements of a prima facie hostile work environment claim are as follows: the plaintiff must allege that (1) she suffered intentional discrimination due to her protected class, (2) the discrimination was severe or pervasive, (3) the discrimination detrimentally affected the plaintiff, (4) the discrimination would detrimentally affect a reasonable person in the same protected class in that position, and (5) the existence of *respondeat superior* liability. *Mandel v. M 7 Q Packaging*

*Corp.*, 706 F.3d 157, 167 (3d Cir. 2013). The doctrine of *respondeat superior* exists to hold an employer "liable for either a supervisor's or a co-worker's discriminatory acts." *In re Trib. Media Co.*, 902 F.3d 384, 399 (3d Cir. 2018).

But an employer cannot be held liable for the actions of individuals who are not employees of *that* employer, nor for a work environment or people that it does not control. Although the Plaintiff plausibly alleges that the environment at Allegheny General Hospital could be found to be racially hostile as to the Plaintiff, she does not assert that the individuals allegedly involved in the creation of that hostile work environment were employees of GHR or that GHR had any control over them or their actions. GHR therefore cannot plausibly be held liable for a hostile work environment under a theory of *respondeat superior*.

Finally, as to the retaliation claim against GHR, the Court concludes that the threadbare factual allegations in the FAC as to GHR's retaliation against Plaintiff do not rise beyond the speculative level. At the pleading stage, for a retaliation claim, the plaintiff must plausibly plead that: (1) she engaged in protected activity; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action. *Kengerski v. Allegheny Cnty.*, 435 F. Supp. 3d 671, 676 (W.D. Pa. 2020). To survive an MTD on a retaliation claim, the plaintiff must plausibly plead that "the protected activity was a substantial or motivating factor in the alleged retaliatory action." *Evans v. Port Auth. Trans-Hudson, Corp.*, No. 04-4062, 2006 WL 408391, at *5 (3d Cir. Feb. 23, 2006) (quoting *Pro v. Donatucci*, 81 F.3d 1283, 1288 (3d Cir.1996)).

GHR knew, at a minimum, about the Plaintiff's first complaint concerning racial hostility in the workplace. The FAC asserts that Plaintiff initially reported her complaint to GHR, and that GHR then reached out to AHN management about those complaints. And the record reflects that

14

various managers at AHN engaged in assessing and addressing those complaints. GHR did not, itself, investigate that complaint. And the FAC does not say *anything* else about GHR's involvement with or information about any incidents involving the Plaintiff thereafter. According to the FAC, the next point at which GHR is involved is the point at which AHN told GHR it was terminating the Plaintiff's services at AHN. As pleaded, GHR is essentially uninvolved in Plaintiff's workplace situation from January 17, 2023, through May 7, 2023. Furthermore, GHR informed the Court that it did *not* terminate the Plaintiff from its pool of nurses eligible for assignment after AHN terminated her, and in fact it was noted (and unrebutted) by counsel at Oral Argument that GHR took affirmative steps to place the Plaintiff at another healthcare facility promptly after AHN's termination of her services. The FAC does not plausibly show that the Plaintiff's alleged protected activity — reporting complaints of racial harassment — was a motivating factor for any unlawful actions taken by *GHR* as to the Plaintiff.

GHR is one of the two Defendants that has been in this case since its inception. GHR did not file a Motion to Dismiss the initial Complaint, (ECF No. 1), but the Plaintiff has nonetheless had two bites at the apple to state a plausible claim against GHR. In the Court's estimation, the Plaintiff has not come close to that threshold on either attempt, indicating that further amendment would be futile. For that reason, the Court dismisses the claims against GHR with prejudice and without leave to amend.

## II.    First Amended Complaint

Although the Court has relied upon the FAC throughout this Memorandum Order as the current operative complaint, the Court goes on to strike the FAC as filed for two reasons: first, because the contents of the FAC violate a direct Order of the Court, and second, because it violates

15

Rule 8 of the Federal Rules of Civil Procedure. Henceforth, the FAC is stricken, and any amendatory pleading authorized by this Order must start anew.

On May 1, 2025, counsel for Defendant AHN submitted a Stipulated Protective Order to the Court. (ECF No. 50). The Stipulated Protective Order was signed both by Plaintiff's counsel, Mr. Joshua Ward, and by AHN's counsel, Ms. Mariah McGrogan. That same day, the Court entered an Order approving the Stipulated Protective Order after its careful review of the same. (ECF No. 51). The Court's Protective Order provided that any party could designate documents containing sensitive information either "Confidential" or "Attorneys' Eyes Only." Such designations would restrict access to such documents to "Authorized Persons," including the parties, attorneys on the case, the Court, and other select individuals. (ECF No. 51-1, at 2). The Protective Order specifically stated that "No person receiving Protected documents shall directly or indirectly use, transfer, disclose, or communicate in any way the documents *or their contents* to any person other than the Authorized Persons described in this Protective Order." (ECF No. 51-1, at 3 (emphasis added)). It also stated that any party (or even non-parties with a recognized interest) could seek modification of the Protective Order at any time.

As is customary in this Court, the Protective Order was proactive and anticipatory. In other words, the actual underlying materials to be produced in discovery pursuant to the Protective Order had not been identified or produced at the time the Court signed the Protective Order, and the parties well knew that. But in order to facilitate the discovery process and at the same time give fair notice to the parties and public that the Court could conclude that some particular confidentiality designations may be deemed by the Court unwarranted within the facts of the case or under prevailing law, the following was stamped in red ink on both the Court's Order, (ECF

16

No. 51), and the Stipulation for the Protective Order attached to the signed Protective Order, (ECF No. 51-1).

This Order entering a protective order is provisional in that it may be vacated or modified, in whole or in part, at any time for good cause shown upon the motion of any party (or any other person with a recognized interest as to such matters), or by the Court upon its own motion. /s/ Mark R. Hornak, U.S. District Judge

Defendant AHN alleged in its Brief supporting its Motion to Dismiss, (ECF No. 126), that Plaintiff's counsel knowingly included multiple paragraphs in the FAC containing direct quotations of documents that had been marked confidential pursuant to the Court's Protective Order and as to which the Plaintiff had neither sought nor obtained relief from the Protective Order. (ECF No. 126, at 10 (citing FAC, ECF No. 74, ¶¶ 48, 50, 130, 132, 136, 138, 140, 143, 148, 152, 157–61, 163)).

Plaintiff's counsel does not deny that he violated the Court's Protective Order. In his Response to the Court's Order to Show Cause why he should not be subject to sanctions for violating the Court's Order, he explained that including such material "was not a willful disregard of the Court's Order, but a mistaken belief that pleading facts derived from discovery materials, without attaching the underlying documents themselves, did not require a prior sealing request or designation challenge." (ECF No. 149, at 2). But in the Court's view, filing a FAC on the Court's public docket that repeatedly quotes documents designated "Confidential" runs exactly counter to the Protective Order's mandate to not "directly or indirectly use, transfer, disclose, or communicate in any way the documents or their contents to any person other than the Authorized Persons described in this Protective Order." (ECF No. 51-1, at 3).

17

Any assertion that Plaintiff's counsel did not and could not know that, at a minimum, AHN took a different view of the terms of the Protective Order is false, and given the language of that Order, any such argument is baseless. In Defendant AHN's Response to the Show Cause Order, it included Exhibits displaying the communications between Plaintiff's counsel and AHN's counsel about the draft FAC more than a month before the FAC was actually filed with the Court.[2] (ECF No. 152-2). In those communications, AHN's counsel highlighted the draft FAC's violation of the Court's Protective Order. Nowhere in the litany of contentions that Plaintiff's counsel makes to AHN's counsel about why he included information marked "confidential" does he say that he did not believe that *quoting* the confidential material did not, in fact, violate the Protective Order. Instead, Plaintiff's counsel asserted that the Protective Order said that the Court could modify it at any time; that AHN's confidentiality designations were "overbroad and self-serving"; and that "[b]locking Plaintiff from using these documents in her pleadings would . . . prejudice her ability to prosecute her claims." (ECF No. 152-2, at 2–4).

In short, not only did Plaintiff's counsel violate the Protective Order via his pleading on behalf of the Plaintiff when he filed it, but he was warned by AHN's counsel that he was about to do exactly that — an accurate and prescient warning given the language of the Protective Order and the subsequent fallout to date. He filed it anyway, without any effort to seek relief from any provision of the Protective Order. Then, he compounded his violative conduct by advancing a wholly meritless argument — that he did not know that he was in fact violating the Protective Order by quoting directly from confidential documents — despite the fact that there were email

---

[2] The communications between counsel exhibited at ECF No. 152-2 occurred in August 2025; the FAC was filed by Plaintiff's counsel on September 30, 2025. Also, the Court notes that on the record as it exists, it appears that all of the conduct at issue here rests with Plaintiff's counsel Mr. Ward and not his client, as the Court discusses in Part III of this Memorandum Order. The Court would also note that given the nature of these matters, the Court by Order sealed the FAC on the docket. (ECF No. 151).

receipts confirming that Plaintiff's counsel was indeed fully aware of the violative nature of his conduct. More on that in Part III of this Memorandum Order.

There can be no dispute that the FAC generated by Plaintiff's counsel violated the Court's Protective Order — to which the parties stipulated in a filing signed by Plaintiff's counsel Mr. Ward — that was entered by the Court pursuant to Federal Rule of Civil Procedure 26(c). (ECF No. 51-1, at 1). Under Rule 37(b)(2)(A), the Court may strike pleadings in whole or in part if a party "fails to obey an order to provide or permit discovery." The Court also has inherent authority to strike pleadings for noncompliance with an Order. As this Court recently recognized in a case concerning the use of AI in a party's brief, "[c]ourts have the inherent power to enforce their own Orders," and can do so by striking a party's filings. *David Mullins v. Duquesne University of the Holy Spirit*, No. CV 25-1366, at *1 (W.D. Pa. July 15, 2026). The lack of compliance by Mr. Ward with the Court's Protective Order is the first of the two reasons that the Court strikes the FAC.

The second reason the Court strikes the FAC is for its failure to adhere to Rule 8 of the Federal Rules of Civil Procedure. Under Rule 8, a pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Allegations in a complaint must be "simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). After the Court explicitly warned the Plaintiff to comply with Rule 8 in any FAC to be filed, the Plaintiff still failed to do so. (ECF No. 73 ("The Plaintiff is advised to comply with Rule 8 in preparing the First Amended Complaint.")).

This is not the first time that the Court has stricken one of Plaintiff's filings for noncompliance with applicable rules. During the midst of a discovery dispute, the Court had ordered the parties to file statements of position totaling no more than five pages. (ECF No. 134). The Local Rules of this Court provide that all papers filed with the Court are to be in 12-point font

and double-spaced. W.D. Pa. LCvR 5.1(B). No matter — the Plaintiff filed a single-spaced statement of position totaling 46 pages, including exhibits. For obvious reasons, the Court struck that filing and ordered counsel resubmit a compliant filing. (ECF No. 134). Given that, the Court readily reaches the conclusion that Mr. Ward has on multiple occasions viewed the Court's Orders as mere suggestions. But that is not how it works in this Court, or in any court.

Plaintiff's counsel finds himself in a similar position today with regard to the FAC, despite the Court's warning to him in its Order authorizing the filing of such. (ECF No. 73). The FAC is not short, nor plain, nor simple, nor concise, nor direct. It takes the reader on a long-winded and non-chronological journey, repeating allegations multiple times and making a plethora of imbedded legal arguments along the way. It does not intuitively lay out why the Plaintiff is entitled to relief from each of the named Defendants individually; rather, it groups the Defendants together and demands relief, jointly and severally, from each of them, often without any differentiation between them as to alleged conduct or consequences. It is a mass of assertions, as opposed to a statement of claims. And its interwoven legal arguments are not capable of being seen as facts to be admitted or denied in accord with the Civil Rules. All in, it is 35 pages long and 212 paragraphs.

The Court strikes the FAC first and foremost because its content, parroting verbatim the content of documents designated as "confidential" under a Protective Order to which Mr. Ward personally stipulated, violates a direct Order of the Court. But the FAC is also stricken because even if such content were excised, it grossly violated Rule 8 after Mr. Ward had been expressly warned by the Court as to why his other pleadings and filings violated the applicable Rules. If counsel intends to submit a SAC, Plaintiff and her counsel are once again advised to comply with Rule 8 or risk facing additional sanctions.

20

### III.    Sanctions

As stated above, upon a consideration of the record, including the filings addressing these issues by Mr. Ward and defense counsel, as well as statements from both in open Court at Oral Argument on June 30, 2026, the Court concludes that Plaintiff's counsel knowingly violated the Court's Protective Order by virtue of his filing of the FAC. He made the situation worse by not being forthright with the Court when he asserted that he "did not know" that his conduct violated the Court Order when it was clear, based on communications between counsel, that he was aware that his conduct violated the Order.[3] The Court finds and concludes that there is good cause to sanction Plaintiff's counsel for the violation of the Court Order and for acting in bad faith. Such sanctions are appropriate under both Rule 37 and the Court's inherent authority to discipline attorneys.

The violation of a Court's Rule 26 Protective Order is grounds to award sanctions under Rule 37 of the Federal Rules of Civil Procedure. *See, e.g.*, *DiGregorio v. First Rediscount Corp.*, 506 F.2d 781, 788 (3d Cir. 1974) ("Rule 37(b)(2) . . . authorizes the imposition of sanctions, including dismissal of an action, against a party who fails to comply with a discovery order."); *Mains v. Sherwin-Williams Co.*, No. 5:20-CV-00112-JMG, 2022 WL 1443391, at \*3 (E.D. Pa. May 6, 2022) (awarding sanctions to counsel under Rule 37 for violating protective order); *Grant Heilman Photography, Inc. v. Pearson Educ., Inc.*, No. CV 11-4649, 2018 WL 2414984, at \*5 (E.D. Pa. May 29, 2018) (same); *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 490 (5th Cir. 2012) ("Appellants concede that they violated the court's Protective Order, and it was well within the court's discretion to use sanctions as a tool to deter future abuse of discovery.");

---

[3] Why else would Mr. Ward assert as his first defense to AHN's counsel that the Protective Order was modifiable? (ECF No. 152-2, at 2–3). If Mr. Ward truly thought quoting the confidential documents was not violative of the Court's Protective Order, he would have so stated in his communications with AHN's counsel. Nowhere in those communications was the defense that his quoting the material was not in fact violative of the Court Order.

*Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538, 1542 (11th Cir. 1985) ("[A] primary purpose of Rule 37 sanctions is to deter future abuse of discovery."). Of course, "[s]anctions may also be imposed to punish those guilty of willful bad faith and callous disregard of court directives." *Adolph Coors*, 777 F.2d at 1542 (citation omitted).

As to the Court's inherent power to sanction, the Supreme Court has long held that it is within the power of federal courts to discipline attorneys who come before it. *Ex parte Burr*, 22 U.S. 529, 531, 6 L. Ed. 152 (1824). Circumstances that may justify sanctions via the court's inherent power include "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). Imposing sanctions under the court's inherent power usually, but not always, requires a finding of bad faith. *Compare In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 278 F.3d 175, 181 n.4 (3d Cir. 2002), *with Republic of Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65, 74 n.11 (3d Cir. 1994). An appellate court reviews a district court's imposition of sanctions via its inherent power for abuse of discretion. *Chambers*, 501 U.S. at 55.

Before the Court imposes sanctions under Rule 37, it must consider the following: "(1) willfulness and bad faith of the disobeying party; (2) prejudice to the [opposing] party; and (3) effectiveness of lesser sanctions." *Coleman v. Sears, Roebuck & Co.*, 221 F.R.D. 433, 436 (W.D. Pa. 2003) (citing *Estate of Spear v. IRS*, 41 F.3d 103, 111 (3d Cir. 1994)). It is abundantly clear, based on the communications between counsel located at ECF No. 152-2, that Plaintiff's counsel knew that his actions — putting information marked confidential and covered by an extant Order of this Court into the publicly-filed FAC — were violative of the Court's Order. And Plaintiff's counsel knew that more than a full month before he actually filed the FAC on the docket. From

22

the Court's perspective, such conduct shows bad faith in the form of "callous disregard of court directives." *Adolph Coors*, 777 F.2d at 1542 (quotations omitted).

Second, there is clear prejudice to the opposing party, as this issue has sidetracked the resolution of the substantive litigation at bar and cost AHN — the other party to the Protective Order — additional attorneys' fees, along with time and related resources. And as to the third consideration, the effectiveness of lesser sanctions, the Court notes that it has not determined the extent of the monetary sanctions at present. As preluded at Oral Argument, the Court will order Defendant AHN to submit documentation of how much it has cost to litigate the issues of the violation of the Protective Order and sanctions. But as a categorical matter, that sort of proportional monetary sanction meets the moment in terms of the conduct of Plaintiff's counsel, and a lesser non-monetary sanction would not do the job.

Whether counsel's conduct is a "pattern of wrongdoing" can properly be considered when the Court weighs the severity of the sanctions awarded. *Republic of Philippines*, 43 F.3d at 74. As discussed above, this is not the first time that Plaintiff's counsel has disregarded this Court's Orders, which suggests that flouting court directives may be a "pattern of wrongdoing." And, for what it is worth, the Court also notes that this Plaintiff's counsel has been the subject of multiple court orders concerning the issuance of sanctions in this District and Circuit. *See, e.g.*, *Sofaly v. Portfolio Recovery Assocs., LLC*, 155 F.4th 289, 295 (3d Cir. 2025) (affirming district court's use of inherent authority to award attorneys' fees and costs as sanctions to Mr. Ward and co-counsel); *Wilbert v. Pyramid Healthcare*, Civ. Action No. 24-331, ECF No. 35 (W.D. Pa. Mar. 20, 2025) (Hardy, J.) (ordering Mr. Ward to show cause why the Court should not issue sanctions to Mr. Ward). In *Sofaly*, our Court of Appeals affirmed multi-layered sanctions imposed by another member of this Court who had found that Mr. Ward's conduct in that case amounted to "a

campaign of deception designed to line [his] own pockets." *Sofaly v. Portfolio Recovery Assocs., LLC*, No. CV 23-2018, 2024 WL 3652866, at *7 (W.D. Pa. Aug. 5, 2024) (Bissoon, J.). And several days ago, the Third Circuit again affirmed sanctions imposed on Mr. Ward in the amount of $14,636.50 for submitting filings to the Court that contained misquotations that may have been hallucinated by artificial intelligence. *Hileman v. W. Penn Allegheny Health Sys. Inc.*, No. 25-1459, --- F.4th ----, 2026 WL 2083796, at *2 (3d Cir. July 20, 2026). Suffice it to say that this is not the first time that Mr. Ward has gotten himself into hot water with the federal courts of this jurisdiction by engaging in sanctionable conduct.

The Court provided Plaintiff's counsel notice and an opportunity to be heard in open court on the issue of the imposition of sanctions in this case, as is necessary under Third Circuit law. *In re Prudential*, 278 F.3d at 191. The Court concludes that sanctions on Plaintiff's counsel are appropriate if not compelled in this matter. As the Court has previously noted, the Plaintiff herself — Ms. Alesia Flament — likely had nothing to do with her counsel's violation of the Court's Order. (ECF No. 147, at 2). For that reason, to the extent that there is sanctionable conduct, it is conduct attributable to counsel Mr. Ward, not his client. *Carter v. Albert Einstein Med. Ctr.*, 804 F.2d 805, 807 (3d Cir. 1986) ("[W]e have increasingly emphasized visiting sanctions directly on the delinquent lawyer, rather than on a client who is not actually at fault."); *Matter of Baker*, 744 F.2d 1438, 1442 (10th Cir. 1984) ("If the fault lies with the attorneys, that is where the impact of sanction should be lodged. If the fault lies with the clients, that is where the impact of the sanction should be lodged.").

The Court notes, however, that any sanctions that it awards pursuant to Rule 37 and its inherent powers are compensatory, not punitive. In other words, "the fee award may go no further than to redress the wronged party 'for losses sustained'; it may not impose an additional amount

as punishment for the sanctioned party's misbehavior." *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108 (2017) (quoting *Mine Workers v. Bagwell*, 512 U.S. 821, 829 (1994)). If the Court wished to level a punitive penalty directly against Mr. Ward by a further Order of this Court, certain additional procedural provisions would apply. The Court does not, at the present time, initiate that process. But it reminds counsel that such is available as an option to the Court if Plaintiff's counsel continues to disobey Court orders.

To conclude this portion of the Memorandum Order, the Court simply notes that all of this side litigation on the issue of sanctions could have easily been avoided. Under the terms of the Protective Order, any party seeking to use materials designated confidential is required to first obtain permission from the Court or file the pleading under seal, rather than ask for forgiveness after filing a public document containing such confidential material. Plaintiff's counsel Mr. Ward did the latter. As Plaintiff's counsel noted in his communications with AHN's counsel, the Protective Order issued by the Court was modifiable. But it was not ignorable, which is what Plaintiff's counsel did.

\*     \*     \*

The Court reiterates the multiple outcomes of this Memorandum Order. The Claims against Defendants Rachel Jones, Kathy Sikora, and GHR are dismissed; those against Defendant Tarah Day are not. The dismissal as to Rachel Jones is without prejudice; the dismissals as to Kathy Sikora and GHR are with prejudice.

The FAC is now stricken, without prejudice to Plaintiff's counsel refiling a Second Amended Complaint that is compliant with all of the Court's Orders and the Federal Rules of Civil Procedure. Plaintiff is granted leave to amend and file a SAC within twenty-one (21) days from

the date of this Order. All Defendants named in such a SAC shall file their Rule 12 Answer or Motion within twenty-one (21) days of the filing of the SAC.

After conducting a hearing in open Court and giving counsel multiple opportunities to be heard on the matter, the Court has found a reasonable and proper basis to award sanctions to Plaintiff's counsel. The Court directs counsel for AHN — the other party to the Protective Order — to submit documentation of attorneys' expenses and other associated costs that resulted from the litigation concerning Plaintiff's counsel's violation of the Court's Protective Order and the subsequent sanctions litigation. AHN's counsel is directed to submit a single filing containing the following information:

1. A table with one row for each attorney and paraprofessional on this case with the following information: (a) the individual's name, (b) the individual's title or role, (c) the individual's billing rate for this specific matter, (d) the individual's standard billing rate, and (e) the total number of hours, in 6-minute increments, spent by that individual on the specific issues of the violation of the Protective Order and the award of sanctions.

2. Following that table, a breakdown of how each attorney or paraprofessional spent their time as to these matters. As to each attorney or paraprofessional who spent at least 6 minutes on the specific issues of the violation of the Protective Order or sanctions, counsel should provide an explanation of how each of the hours were actually spent by that individual, listed by date, exercising care to not disclose the content of privileged communications.

3. A detailed list, organized by date, of any other costs actually incurred that are directly attributable to the litigation concerning the Plaintiff's violation of the Protective Order

26

and the subsequent sanctions proceedings, with an explanation as to the purpose of each

such cost.

AHN's counsel shall submit the above information within twenty-one (21) days of this Order.

Plaintiff's counsel Mr. Ward may submit a Response within twenty-one (21) days thereafter, and

AHN's counsel may file a Reply in support of its position within seven (7) days thereafter.

**SO ORDERED** this 31st day of July, 2026.

s/ Mark R. Hornak
Mark R. Hornak
United States District Judge